**RECORD NO. 15-2145(L)**
**Cons. w/15-2147**

# IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

_____

UNITED STATES OF AMERICA EX REL BRIANNA MICHAELS
AND AMY WHITESIDES,

*Plaintiffs-Appellants,*

v.

AGAPE SENIOR COMMUNITY, INC., *et al.,*

*Defendants-Appellees,*

v.

UNITED STATES OF AMERICA,

*Intervenor-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AT ROCK HILL
_____

### OPENING BRIEF OF APPELLANTS

_____

T. Christopher Tuck
Catherine H. McElveen
RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC
P.O. Box 1007
1037 Chuck Dawley Blvd., Bldg.-A
Mt. Pleasant, SC 29464
(843) 727-6500
ctuck@rpwb.com
kmcelveen@rpwb.com

Daniel Haltiwanger
Terry E. Richardson, Jr.
RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC
1730 Jackson Street
Barnwell, SC 29812
(803) 541-7850
dhaltiwanger@rpwb.com
trichardson@rpwb.com

Christy M. DeLuca
CHRISTY DELUCA, LLC
3253 Sand Marsh Lane
Mount Pleasant, SC 29466
(843) 834-1289
christy@christydeluca.com

Jessica H. Lerer
Mario A. Pacella
STROM LAW FIRM, LLC
2110 North Beltline Boulevard
Columbia, SC 29201
(803)252-4800
jlerer@stromlaw.com
mpacella@stromlaw.com

*Counsel for Plaintiffs-Appellants*

**LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477**
**A Division of Lantagne Duplicating Services**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____   Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                              YES      NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                              YES      NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    YES    NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    YES    NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    YES    NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          _____
(signature)                                                        (date)

T<small>ABLE OF</small> C<small>ONTENTS</small>

*Page*

CORPORATE DISCLOSURE

TABLE OF CONTENTS.................................................................................... ii

TABLE OF AUTHORITIES .............................................................................. iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ...........................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................1

STATEMENT OF THE CASE............................................................................2

    A.   Statement of Facts ...............................................................................2

        1.   Facts Relating to the Use of Statistical Sampling
             and Extrapolation ....................................................................2

        2.   Facts Relating to the Government's Failure to Approve
             the Settlement Reached by the Parties...................................5

        3.   The District Court's Request for Certification of the Issues
             Pursuant to 28 U.S.C. § 1292(b)............................................8

SUMMARY OF ARGUMENT ............................................................................9

ARGUMENT ....................................................................................................9

    A.   Standard of Review...............................................................................9

    B.   Discussion of Issues ...........................................................................10

        1.   The District Court Erred as a Matter of Law When It Determined that
             Statistical Sampling Cannot Be Employed in a False Claims Act Case
             Such as this Action..........................................................................10

i

a.    Courts Routinely Permit Statistical Sampling and Extrapolation in Cases Involving Medicare Overpayments and Should Allow this Methodology Here ............................................................. 11

2.    Given the Unique Circumstances of this Case, the District Court Erred as a Matter of Law in Determining that the Government Has an Absolute Unreviewable Veto Authority Over the Parties' Settlement of this False Claims Act Case ............................................. 18

CONCLUSION ....................................................................................... 22

REQUEST FOR ORAL ARGUMENT ................................................... 24

CERTIFICATE OF COMPLIANCE ...................................................... 25

CERTIFICATE OF SERVICE .............................................................. 26

## TABLE OF AUTHORITIES

**Cases**

*Chaves County Home Health Service, Inc. v. Sullivan*,
  931 F.2d 914 (D.C. Cir. 1991) ...................................................................14, 15

*Dewhurst v. Century Aluminum Co.*,
  649 F.3d 287 (4th Cir. 2011) ...................................................................9

*East Tennessee Natural Gas Co. v. Sage*,
  361 F.3d 808 (4th Cir. 2004) ...................................................................9

*Goldstar Medical Services, Inc. v. Department of Social Services*,
  955 A.2d 15 (Conn. 2008) ...................................................................12

*Illinois Physicians Union v. Miller*,
  675 F.2d 151 (7th Cir. 1982) ...................................................................12, 14

*Link v. Wabash Railroad*,
  370 U.S. 626 (1962) ...................................................................19, 20

*Nick v. Morgan's Foods, Inc.*,
  99 F. Supp. 2d 1056 (E.D. Mo. 2000) ...................................................................19

*Ratanasen v. California, Department of Health Services*,
  11 F.3d 1467 (9th Cir. 1993) ...................................................................12, 14

*Roadway Express, Inc. v. Piper*,
  447 U.S. 752 (1980) ...................................................................20

*United States v. Cabrera-Diaz*,
  106 F. Supp. 2d 234 (D.P.R. 2000) ...................................................................12, 13, 14

*United States v. Conner*,
  262 Fed. Appx. 515 (4th Cir. 2008) ...................................................................12

*United States v. Fadul*,
  No. DKC 11-0385, 2013 WL 781614 (D. Md. Feb. 28, 2013) ...................................................................11, 14

*United States v. Friedman*, No. 86-0610-MA,
  1993 U.S. Dist. LEXIS 21496 (D. Mass. July 23, 1993)................................16, 17

*United States v. Kitsap Physicians Service*,
  314 F.3d 995 (9th Cir. 2002) ............................................................... 17

*United States v. Skodnek*,
  933 F. Supp. 1108 (D. Mass. 1996) .................................................16

*United States ex rel. Barron v. Deloitte & Touche, LLP*,
No. SA-99-CA-1093-FB,
  2008 WL 7136869 (W.D. Tex. Sept. 26, 2008)..............................................11, 15

*United States ex rel. Crews v. NCS Healthcare of Illinois, Inc.*,
  460 F.3d 853 (7th Cir. 2006) .................................................17

*United States ex rel. Eisenstein v. City of New York*,
  556 U.S. 928 (2009).................................................20, 21, 22

*United States ex rel. El-Amin v. George Washington University*,
  533 F. Supp. 2d 12 (D.D.C. 2008).................................................17

*United States ex rel. Griffith v. Conn*, No. 11-157-ART,
  2013 WL 620259 (E.D. Ky. Feb. 19, 2013) .................................................21, 22

*United States ex rel. Harris v. Bernad*,
  275 F. Supp. 2d 1 (D.D.C. 2003).................................................15

*United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
  498 F. Supp. 2d 25 (D.D.C. 2007).................................................17

*United States ex rel. Killingsworth v. Northrop Corp.*
  25 F.3d 715 (9th Cir. 1994) .................................................18

*United States ex rel. Landis v. Tailwind Sports Corp.*,
  No. 1:10-cv-00976 (CRC), 2015 WL 1623282 (D.D.C. Apr. 9, 2015).................18

*United States ex rel. Loughren v. UnumProvident Corp.*,
  604 F. Supp. 2d 259 (D. Mass. 2009).................................................16

iv

*United States ex rel. Martin v. Life Care Centers of America, Inc.*,
Nos. 1:08-cv-251, 1:12-cv-64,
  2014 WL 10937088 (E.D. Tenn. Sept. 29, 2014) .................................................16

*United States ex rel. Ruckh v. Genoa Healthcare, LLC*,
  No. 8:11-cv-1303-T-23TBM, 2015 WL 1926417 (M.D. Fla. Apr. 28, 2015) ......16

*United States ex rel. Trim v. McKean*,
  31 F. Supp. 2d 1308 (W.D. Okla. 1998) ...............................................................17

*Webb v. Shalala*,
  49 F. Supp. 2d 1114 (W.D. Ark. 1999) .................................................................12

*Yorktown Medical Laboratory, Inc. v. Perales*,
  948 F.2d 84 (2d Cir. 1991)............................................................................12, 14

**Statute**

18 U.S.C. § 1374 ..........................................................................................................2

28 U.S.C. § 1292 .......................................................................................................1, 8

28 U.S.C. § 1294 ..........................................................................................................1

28 U.S.C. § 1331 ..........................................................................................................1

31 U.S.C. § 3729 ........................................................................................2, 3, 13, 18

31 U.S.C. § 3730 .......................................................... 1, 7, 8, 9, 18, 20, 21, 22

31 U.S.C. § 3732 ..........................................................................................................1

31 U.S.C. § 3733 ..........................................................................................................3

42 U.S.C. § 1320 ..........................................................................................................2

**Rules**

Fed. R. Civ. P. 9 ...................................................................................15

Fed. R. Evid. 702 ...............................................................................16

## <u>STATEMENT OF SUBJECT MATTER AND</u>
## <u>APPELLATE JURISDICTION</u>

The District Court has subject matter jurisdiction over the underlying False Claims Act suit pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331.

On September 29, 2015, this Court granted Plaintiffs-Appellants' Petition for Permission to Appeal. Accordingly, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1292(b) and 1294.

## <u>STATEMENT OF THE ISSUES PRESENTED FOR REVIEW</u>

This case presents two questions of law:

1.      Did the District Court err in rejecting the use of statistical sampling and extrapolation to prove liability or damages in a False Claims Act case?

2.      Did the District Court err in determining that the Government has unreviewable veto authority under 31 U.S.C. § 3730(b)(1) to reject a settlement reached between Plaintiffs-Appellants and Defendants[1] in this case where the Government has declined to formally intervene, but has intervened *de facto*, and has failed to act in good faith by basing its objection to the settlement on a scientifically-flawed statistical sampling and extrapolation methodology despite the District Court's order that the use of statistical sampling and extrapolation would not be permitted?

---

[1]  Defendants (collectively referred to herein as "Agape" or "Defendants-Respondents") consist of a network of twenty-four entities operating throughout South Carolina, each containing some form of "Agape" in their names.

1

## STATEMENT OF THE CASE

On December 7, 2012, Plaintiffs-Appellants Brianna Michaels and Amy Whitesides initiated this *qui tam* action on behalf of themselves and the United States of America under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, *et seq.*, and the Health Care Fraud statute, 18 U.S.C. § 1374, based on Agape's widespread and fraudulent scheme of admitting patients to hospice who do not qualify for the program, recertifying patients to hospice who do not qualify, and billing for services that are not being provided to patients. JA 49-71. Generally, the claims asserted by Plaintiffs-Appellants, former employees at Agape's facilities, center on two types of reimbursements Agape seeks from federal healthcare programs, namely, payments related to routine home hospice care and payments related to general inpatient hospice care. JA 49-71; JA 123-176.

### A. Statement of Facts

#### 1. Facts Relating to the Use of Statistical Sampling and Extrapolation

After the filing of the initial Complaint, Agape filed a Motion to Dismiss for Failure to State a Claim. JA 76-96. Plaintiffs-Appellants filed an Amended Complaint on December 9, 2013, and the operative Second Amended Complaint on March 6, 2014. JA 123-176. On April 28, 2014, Agape filed its Answer to the

Second Amended Complaint (JA 182-201), and the parties engaged in motions practice on numerous issues.

On August 14, 2014, the District Court held a hearing on all outstanding motions.  *See* DE 155, Minute Entry.  During the motions hearing, the District Court requested that the parties brief the issue of whether Plaintiffs-Appellants could employ a statistically valid random sample of hospice claims to extrapolate damages under the False Claims Act, 31 U.S.C. §§ 3729-3733, due to the parties' disagreements related to the designation of experts and the damages methodology to be used in this case.  JA 238; JA 470.

On August 18, 2014, the District Court issued an order resolving the pending motions.  JA 222-38.  The District Court held in abeyance Plaintiffs-Appellants' motion to stay expert disclosure deadlines until the issue of the viability of statistical sampling in this matter was ruled upon (JA 238), as the District Court and the parties believed that a ruling on this critical threshold issue would significantly impact trial preparation in this case.  JA 470.

After briefing and argument on the statistical sampling issue, the District Court denied Plaintiffs-Appellants' motion to permit the use of statistical sampling. JA 421-22; *see also* JA 468-86.  However, on June 15, 2015, the District Court implored the parties to seek permission from this Court to review its decision due to the "staggering" number of claims that would be involved in the trial of this

3

case. JA 469. The District Court recognized that, if "the case proceeds without the use of statistical sampling in determining damages, the parties in this action face a trial of monumental proportions, involving a staggering outlay of expenses by the Plaintiff-Relators and a significant drain of the resources of this Court, which would possibly be unnecessary if this Court's determination to reject statistical sampling were to be reversed." JA 485.

The patient claims involved in this case are, indeed, staggering. While Agape contends that there were approximately 19,820 patients admitted to its facilities (JA 243; JA 249-53) that submitted approximately 53,280 claims during the applicable time period, Plaintiffs-Appellants believe that there were 10,166 patients that filed 61,643 claims. JA 469-70; JA 477. Plaintiffs-Appellants' two experts estimate that they spend between four to nine hours reviewing each patient's chart. JA 470. Using the conservative figures provided by Plaintiffs-Appellants, the estimated potential expense related to expert file review alone is between $16.2 million and $36.5 million. JA 470. Those costs would not even include expense related to other facets of trial preparation that would amplify the final numbers. JA 476. According to the Government, the potential recovery in this case should fall in the range of $25 million. JA 472; JA 476.

While the Government has interposed itself in this litigation, as set forth more fully below, it has failed to underwrite the costs of these expert witnesses (JA

4

476) and, as the District Court confirmed, has steadfastly maintained that "it should not be required to underwrite any of the costs of going forward with the trial that [the Government] demands take place."  JA 478.

### 2.    Facts Relating to the Government's Failure to Approve the Settlement Reached by the Parties

After the filing of the Complaint in this case, the Government declined to formally intervene as a party in the underlying action on March 5, 2013.  JA 72-73.  The District Court subsequently lifted the seal (JA 74-75), and Plaintiffs-Appellants filed Acknowledgements of Service in April 2013.

Agape has argued (JA 442-43), and the District Court has confirmed, that "[a]lthough the Government has not intervened in this case, it has been an active participant in the litigation from the beginning."  JA 478.  The Government has filed numerous motions, responses and replies to motions, and statements of interests.  (*See*, *e.g.*, DE 96, 105, 140, 167, 251, 259, 272, 273, 274, 276, and 300).  The Government continued to actively investigate Plaintiffs-Appellants' claims against Agape for almost three years after the underlying case was filed, issuing Civil Investigative Demands ("CIDs") requesting hundreds of thousands of documents.  JA 441; JA 478.   The Government also interviewed countless witnesses, took depositions pursuant to CIDs, reviewed thousands of pages of medical records, consulted experts, appeared in court and participated in court

hearings, attended depositions of witnesses, requested extensions of time, and participated in telephone conferences.  JA 433; JA 441; JA 479.

On November 25, 2014, the parties and the Government engaged in mediation efforts.  JA 471.  The Government participated in the first formal mediation of this case before The Honorable Mary Gordon Baker, United States Magistrate Judge, prior to her appointment to the bench.  The Government made the primary presentation and initiated the settlement demand to Agape.  JA 471-72; JA 443; JA 443 n.2.  Those trilateral settlement discussions were not successful and the parties returned to litigation for the completion of voluminous expert discovery and motion practice.

A second mediation was ultimately scheduled on January 8, 2015, a point at which the parties neared critical discovery deadlines for a bellwether trial scheduled by the District Court.  The Government was not invited to participate by mediator Judge Baker, (JA 472), and Plaintiffs-Appellants and Agape negotiated a resolution of all pending issues.  Plaintiffs-Appellants and Agape then executed a settlement document setting forth the recommended terms and conditions. JA 472.  In mid-January 2015, the parties informed the District Court that a settlement had been reached in totality, with Agape paying an agreed-upon sum in full settlement of all claims. JA 472.  In response to the announced comprehensive settlement, the Government promptly signaled its intention to object to the resolution, relying

6

upon 31 U.S.C. § 3730(b)(1), which provides that the trial court and the United States Attorney General must consent to a dismissal of a False Claims Act *qui tam* case. JA 472.

As a result of the Government's objection, several status conferences were held by the District Court in an attempt to resolve this case. JA 472. During the status conferences, it became clear to the District Court and the parties that the basis for the Government's objection was its contention that the potential damages in this case were approximately $25 million. JA 472. As stated by the District Court, "The Government arrived at its potential recovery figure by using an 'error rate' in the '20-60% range' derived from an expert review of what the Government refers to as 'cherry picked' claims." JA 472-73. Because the Government refused to disclose its damages calculations or the methodology it employed to the parties or the District Court, Agape filed a Motion for Disclosure of United States' Computation of Damages, along with a supporting memorandum, on April 22, 2015. JA 430-31; JA 432-37. The Government opposed the motion to disclose on the grounds that it was not a "party" to this case and, accordingly, was not required to make such disclosures. JA 459-60.

Even though the District Court had previously issued an order denying the use of statistical sampling on March 16, 2015, JA 421-22, the Government employed statistical sampling and extrapolation to arrive at its damages figure.

7

"[S]uffice it to say that the Government has used some form of statistical sampling extrapolated to the universe of potential claims in its damages calculation."  JA 473; *see also* JA 434.

The Government has, therefore, objected to the settlement of this case using a methodology that the District Court expressly rejected (JA 473) and that was based on a scientifically-flawed methodology derived from a review of cherry-picked claims.  JA 472-73.

### 3.    The District Court's Request for Certification of the Issues Pursuant to 28 U.S.C. § 1292(b)

On June 25, 2015, the District Court issued its Certification Order, *sua sponte*, imploring the parties to seek review of the District Court's decisions relating to the bounds of the Government's veto power under 31 U.S.C. § 3730(b)(1) over the settlement of this case and the use of statistical sampling and extrapolation to determine damages in a False Claims Act action.  JA 468-86.

This Court agreed with the District Court that these issues present controlling questions of law as to which there is a substantial difference of opinion, and that an immediate appeal from the District Court's Certification Order may materially advance the ultimate termination of this litigation.   This appeal followed.

## SUMMARY OF ARGUMENT

The District Court erred as a matter of law when it rejected the use of statistical sampling and extrapolation to prove liability or damages in a False Claims Act case involving voluminous claims.   Further, given the unique circumstances of this case, the District Court erred in determining that the Government has unreviewable veto authority under 31 U.S.C. § 3730(b)(1) to reject the parties' settlement.   While the Government has declined to formally intervene, it has intervened *de facto* and failed to act in good faith.   Accordingly, the District Court is vested with the authority to review the Government's objection to the settlement for reasonableness, to order that the Government disclose its damages calculation methodology, and to order that the Government underwrite the expenses of this litigation.

## ARGUMENT

### A.    Standard of Review

The District Court's legal conclusions are subject to de novo review. *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011) ("Factual findings are reviewed for clear error; legal conclusions, de novo.") (citing *E. Tenn. Nat. Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004)).

9

**B.    Discussion of Issues**

    **1.    The District Court Erred as a Matter of Law When It Determined that Statistical Sampling Cannot Be Employed in a False Claims Act Case Such as this Action**

Courts have routinely permitted statistical sampling and extrapolation of damages in cases involving Medicare overpayments. Due to the sheer volume of claims at issue, trying this case would be cost-prohibitive and would result in a trial of "monumental proportions" spanning over a year, making this case particularly well-suited for the employment of statistical sampling and extrapolation. Accordingly, this Court should reverse the District Court's order denying the use of statistical sampling and extrapolation.

As set forth above, Agape maintains there were approximately 19,820 patients admitted to its facilities over the course of certain periods of time across South Carolina. JA 243; JA 249-53. As further demonstrated above, Plaintiffs-Appellants' experts would require exorbitant time at significant cost to review the charts of Agape's affected population and to provide deposition and trial testimony. Plaintiffs-Appellants' costs of trying this case under the current damages model are projected to exceed even the Government's ambitious damages calculation.

### a.   Courts Routinely Permit Statistical Sampling and Extrapolation in Cases Involving Medicare Overpayments and Should Allow this Methodology Here

Courts have repeatedly permitted and upheld the use of statistical sampling and extrapolation to calculate damages in cases involving claims similar to those at issue here.  The true question for the District Court is not whether statistical sampling and extrapolation, in and of itself, is appropriate, but whether the statistical sampling is conducted in a scientifically proven and accepted manner pursuant to the Supreme Court's ruling in *Daubert* which permits the use of statistical methods of scientific research and proof "provided the evidence is based upon sufficient facts or data, the product of reliable principles and methods, and the expert applied the principles and methods reliably to the facts of the case." *United States ex rel. Barron v. Deloitte & Touche, LLP*, No. SA-99-CA-1093-FB, 2008 WL 7136869, at *2 (W.D. Tex. Sept. 26, 2008).

In a relatively recent opinion from a district court within the Fourth Circuit involving overpayments made by Medicare and Medicaid, the Government "offer[ed] damages calculations based on a 'statistical sampling and extrapolation' approach." *United States v. Fadul*, No. DKC 11-0385, 2013 WL 781614, at *14 (D. Md. Feb. 28, 2013).  The court found that the extrapolated total "represents the soundest measure of damages." *Id.*  In so finding, the *Fadul* court recognized, "Courts have routinely endorsed sampling and extrapolation as a viable method of

11

proving damages in cases involving Medicare and Medicaid overpayments where a claim-by-claim review is not practical." *Id.* (citing *Ill. Physicians Union v. Miller*, 675 F.2d 151, 155 (7th Cir. 1982); *Yorktown Med. Lab., Inc. v. Perales*, 948 F.2d 84, 89-90 n.7 (2d Cir. 1991)).

"It is well established that proof of damages through the use of statistics and statistical sampling has been endorsed in numerous cases involving medicare and medicaid overpayments." *Goldstar Med. Servs., Inc. v. Dep't of Social Servs.*, 955 A.2d 15, 31 (Conn. 2008) (collecting cases and quoting *United States v. Cabrera-Diaz*, 106 F. Supp. 2d 234 (D.P.R. 2000)); *see also Ratanasen v. California, Dep't of Health Servs.*, 11 F.3d 1467, 1471 (9th Cir. 1993) (joining other circuits in approving the use of sampling and extrapolation); *Webb v. Shalala*, 49 F. Supp. 2d 1114 (W.D. Ark. 1999) (in action filed by physician seeking review of Secretary of Health and Human Services' decision imposing liability for overpayments under Medicare, court found use of statistical sampling and extrapolation appropriate); *United States v. Conner*, 262 Fed. Appx. 515, 519 (4th Cir. 2008) (in criminal matter where owner of medical emergency transportation company was convicted of Medicare and Medicaid fraud, court determined government's use of statistical sampling and extrapolation provided adequate support for district court's loss determination under sentencing guidelines).

Statistical sampling and extrapolation have been used to calculate damages

12

in False Claims Act cases involving the presentment and payment of claims to Medicare. In *United States v. Cabrera-Diaz*, the Government filed suit to recover damages and civil penalties from defendants for false claims made in violation of the False Claims Act, along with other common law claims, under the terms of the Medicare program. 106 F. Supp. 2d 234, 235 (D.P.R. 2000). The court first set forth the remedies available under the False Claims Act: "The False Claims Act provides that any person who violates its provisions is liable to the United States for 'a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person.'" *Id.* at 239 (quoting 31 U.S.C. § 3729(a)). "Persons violating the Act are also liable for the cost of litigation." *Id.* (citing § 31 U.S.C. § 3729(a)).

The Court continued, "[t]here is no set formula for measuring damages under the False Claims Act." *Id.* "Damages have been measured in a variety of ways and the measure applied by the courts in specific cases has been greatly influenced by the nature of the fraud and the type of Government transaction affected by it." *Id.* The Supreme Court "established a simple rule of damages under the Act; the amount the Government would not have paid had it known the true facts." *Id.*

Taking this into account, *Cabrera-Diaz* determined that the use of statistical sampling and extrapolation of damages in the False Claims Act context was

13

appropriate, recognizing, as *Fadul* and numerous other courts have, that this method of measuring damages has been successfully applied to many cases involving Medicare and Medicaid overpayments.

> Numerous cases involving Medicaid and Medicare overpayments have endorsed proof of damages through the use of statistics and statistical sampling. In *Ratanasen v. State of California*, 11 F.3d 1467 (9th Cir.1993), and *Yorktown Medical Laboratory, Inc. v. Perales*, 948 F.2d 84, 89–90 (2d Cir.1991), the Ninth and Second Circuits rejected plaintiffs' due process challenges to the use of statistical extrapolation from a sample to calculate the amount of Medicaid overpayments. Likewise, the District of Columbia Circuit upheld HHS' disallowance of claims based on extrapolations from audits from a random selection of Medicare claims. *Chaves County Home Health Service v. Sullivan*, 931 F.2d 914 (D.C. Cir. 1991), *cert. denied*, 502 U.S. 1091, 112 S.Ct. 1160, 117 L.Ed.2d 408 (1992). The Seventh Circuit, in a recoupment case, agreed that "the use of statistical samples had been recognized as a valid basis for findings of fact in the context of Medicaid reimbursement." *Illinois Physicians Union v. Miller*, 675 F.2d 151, 155 (7th Cir.1982).

*Cabrera-Diaz*, 106 F. Supp. 2d at 240. The court continued, "In *Illinois Physicians Union*, the court emphasized an important consideration at issue in the matter:

> The Department processes an enormous number of claims and must adopt realistic and practical auditing procedures. We agree with the district court's conclusion that, in view of the enormous logistical problem of Medicaid enforcement, *statistical sampling is the only feasible method available*."

*Cabrera-Diaz*, 106 F. Supp. 2d at 240 (quoting *Illinois Physicians Union*, 675 F.2d at 157 (emphasis added in *Cabrera-Diaz*)). In *Cabrera-Diaz*, a sampling of 461 claims revealed that 455 of the 461 sample claims were "overstated, falsely

14

claimed, unsupported or undocumented." *Id.* at 237. The amount paid by the government to the defendant for these sampled claims was then "projected or extrapolated to the entire universe of claims paid" over the course of two years to determine the estimated overpayments. *Id.* The court entered judgment against the defendants for "treble (three times) the damages sustained" based on the estimated overpayments. *Id.* at 243-44. The court exercised its discretion and determined that assessing civil penalties under the False Claims Act in this case would be excessive. *Id.* at 242.

In another False Claims Act case, *United States ex rel. Harris v. Bernad*, the court found that the government's use of a statistical sampling obtained to describe the defendant's fraudulently gained benefit provided an adequate factual basis for its allegations of fraud under Fed. R. Civ. P. 9(b). 275 F. Supp. 2d 1 (D.D.C. 2003) (citing *Chaves Cnty. Home Health Serv., Inc. v. Sullivan*, 931 F. 2d 914, 917-18 (D.C. Cir. 1991) (affirming the use of statistical sampling to determine damages caused by the overpayment of Medicare reimbursements)).

In *United States ex rel. Barron v. Deloitte & Touche, LLP*, in deciding a motion to exclude the report and testimony of the relator's statistical expert in a False Claims Act case, the district court, again, recognized the "relevance of statistical evidence[.]" No. SA-99-CA-1093-FB, 2008 WL 7136869, at *2 (W.D. Tex. Sept. 26, 2008). While few courts "have specifically addressed the use of

15

statistics and statistical sampling as an acceptable method for determining damages in False Claims Act cases[,]" "[t]he underlying focus continues to be the Supreme Court's ruling in *Daubert* which permits the use of statistical methods of scientific research and proof pursuant to Rule 702 of the Federal Rules of Evidence provided the evidence is based upon sufficient facts or data, the product of reliable principles and methods, and the expert applied the principles and methods reliably to the facts of the case." *Id.* (emphasis added); *see also United States ex rel. Ruckh v. Genoa Healthcare, LLC*, No. 8:11-cv-1303-T-23TBM, 2015 WL 1926417, at *3 (M.D. Fla. Apr. 28, 2015) (district court expressed an inclination to allow statistical sampling and extrapolation by rejecting *Friedman* and explaining that *Friedman* does not stand for the proposition that statistical sampling cannot be used in large-scale *qui tam* cases); *United States ex rel. Martin v. Life Care Ctrs. of Am., Inc.*, Nos. 1:08-cv-251, 1:12-cv-64, 2014 WL 10937088 (E.D. Tenn. Sept. 29, 2014) (same); *United States ex rel. Loughren v. UnumProvident Corp.*, 604 F. Supp. 2d 259, 263 (D. Mass. 2009) (extrapolation is a reasonable method for determining the number of false claims so long as the statistical methodology is appropriate).[2]

---

[2] The cases relied on by Agape in the proceedings below are distinguishable from this case, as they either involve a smaller amount of claims, or they involve a scientifically-flawed sampling. *See*, *e.g.*, *United States v. Skodnek*, 933 F. Supp. 1108 (D. Mass. 1996) (court did not reject statistical sampling, per se; instead, court found method used was not sufficiently reliable: "data on which the

This Court should reverse the District Court's decision rejecting the use of statistical sampling because it has been and remains a widely-accepted method for determining damages and is the only feasible method available in this case in order to avoid a year-long trial of "monumental proportions" that would result in Plaintiffs-Appellants being forced to spend more money (estimated at a significant

government relies is skewed"; "did not begin with a random sample"); *United States v. Friedman*, No. 86-0610-MA, 1993 U.S. Dist. LEXIS 21496 (D. Mass. July 23, 1993) (involving 676 claims); *United States ex rel. Crews v. NCS Healthcare of Ill., Inc.*, 460 F.3d 853, 857 (7th Cir. 2006) (court did not reject plaintiff's use of percentages to establish liability because statistical sampling and extrapolation was unsound method; instead, court found that plaintiff's argument that 10-20% of vouchers at issue "must have been false" failed due to plaintiff's "utter lack of evidence"); *United States ex rel. El-Amin v. George Washington Univ.*, 533 F. Supp. 2d 12, 50 (D.D.C. 2008) (court acknowledged that "[c]onsulting an expert statistician, qualified to perform random samples, is one proven and judicially accepted method of determining that a proffered sample is mathematically sound" and rejected relator's request to use statistical sampling, not because statistical sampling was unsound method, but because "[a]t no point during this lengthy period . . . have the Relators taken the preparatory steps that would give them the proper foundation to try this case by statistical sample" and, unlike here, discovery had closed); *United States ex rel. Trim v. McKean*, 31 F. Supp. 2d 1308, 1314 (W.D. Okla. 1998) (court did not reject statistical sampling in *any* case; court rejected use of extrapolation in *that case* because audits at issue were deemed "to be insufficient to constitute a statistical sample of the universe of fraudulent claims"); *United States ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 67-68 (D.D.C. 2007) (only 66 claims at issue, and court found that where liability, and thus the fact of *some* damage, is established, the inability to ascertain the *amount* of damages with mathematical certainty should not stand as a bar to recovery"; *United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002) (where relator failed to produce any evidence establishing submission of a single false claim, court rejected plaintiff's argument and distinguished cases cited by plaintiff, "Alfatooni's argument rests upon cases that allow parties, who can point to specific examples of false claim, to estimate total damages by extrapolation based on proof that a defendant engaged in systematic fraud".) (emphasis added).

17

number by the District Court) for a case that the Government contends is worth much less. For this Court to rule otherwise would result in a particularly harsh and perverse outcome to the federal treasury; namely, the larger the fraud, the less such fraudulent claims can be confronted and remedied via *qui tam* litigation.

> **2.     Given the Unique Circumstances of this Case, the District Court Erred as a Matter of Law in Determining That the Government Has an Absolute Unreviewable Veto Authority Over the Parties' Settlement of this False Claims Act Case**

Under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, a case "may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1). The District Court below found that the unambiguous language of § 3730(b)(1) requires the consent of the Attorney General as a prerequisite to the dismissal of a False Claims Act case pursuant to a settlement between a relator and a defendant. JA 473-74.

As set forth in the District Court's Certification Order, the current state of the law on this issue was summarized in a recent district court decision that sided with the Fifth and Sixth Circuits in rejecting the Ninth Circuit's opinion in *United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715 (9th Cir. 1994). JA 475-76 (quoting *United States ex rel. Landis v. Tailwind Sports Corp.*, No. 1:10-cv-00976 (CRC), 2015 WL 1623282 (D.D.C. Apr. 9, 2015)).

It may be the case that the Government has the authority under 31 U.S.C. § 3730(b)(1) to reject a relator and defendant's settlement in a typical False Claims

18

Act matter in which the Government has declined to intervene and has appropriately limited its involvement during the course of the litigation. However, under the unique circumstances of this case, the Government should not be permitted to block the parties' settlement.

Because the Government has actively participated in and litigated this case, resulting in a *de facto* intervention, the District Court is vested with the authority to review the Government's objection to the settlement for reasonableness (which is, in reality, an unreasonable settlement demand based on a flawed statistical sampling of "cherry picked" claims), to order the Government to reveal its damages calculation methodology, to respond to discovery requests, and to underwrite the costs of the prosecution of the trial of this case that it insists the parties undertake. "The Federal Rules of Civil Procedure are not intended to be the exclusive authority for actions to be taken by district courts. . ." *Nick v. Morgan's Foods, Inc.*, 99 F. Supp. 2d 1056, 1060 (E.D. Mo. 2000) (citing *Link v. Wabash R.R.*, 370 U.S. 626 (1962)). "In *Link*, the Supreme Court noted that a district court's ability to take action in a procedural context may be grounded in '"inherent power," governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Id.* (citing *Link*, 370 U.S. at 630-31).

> This authority likewise forms the basis for continued development of procedural techniques designed to make the operation of the court

19

> more efficient, to preserve the integrity of the judicial process, and to control courts' dockets. Because the rules form and shape certain aspects of a court's inherent powers, yet allow the continued exercise of that power where discretion should be available, the mere absence of language in the federal rules specifically authorizing or describing a particular judicial procedure should not, and does not, give rise to a negative implication of prohibition.

*Id.* at 1060-61 (quoting *Link*, 370 U.S. at 629-30). "The Supreme Court has long held that 'the inherent powers of federal courts are those which 'are necessary to the exercise of all others.'" *Id.* at 1061 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

In its Response to Defendants' Motion for Disclosure of the United States' Computation of Damages, the Government relies on *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009) to support its position that it is not a "party" in this case and has a right to decide when to intervene as a "party," which includes the "consideration of the costs and benefits of party status." *Eisenstein*, 556 U.S. at 933. JA 459-60. While it may be true that the Government can decide when to formally intervene, the *Eisenstein* case demonstrates that the Government has overstepped its bounds in this action. Specifically, the United States Supreme Court in *Eisenstein* stated as follows:

> If the United States declines to intervene, the relator retains "the right to conduct the action." § 3730(c)(3). The United States **is thereafter limited to exercising *only* specific rights during the proceeding**. These rights include requesting service of pleadings and deposition transcripts, § 3730(c), seeking to stay discovery that "would interfere with the Government's investigation or prosecution of a criminal or

civil matter arising out of the same facts," § 3730(c)(4), and vetoing a relator's decision to voluntarily dismiss the action, § 3730(b)(1).

*Eisenstein*, 556 U.S. at 932 (emphasis added); *see also United States ex rel. Griffith v. Conn*, No. 11-157-ART, 2013 WL 620259, at *2-3 (E.D. Ky. Feb. 19, 2013) (relying on *Eisenstein* and finding that the Government was not authorized to ask for a stay of the case under § 3730: "The problem for the United States is that even if the Court can stay the entire case, the Act does not give the United States the ability to ask for that stay.") (emphasis added).

Here, the Government has far exceeded its limited specific rights during this proceeding, as set forth in § 3730 and *Eisenstein*, and has interposed itself into this litigation while claiming, when convenient, that it is not technically a "party" in order to avoid the expense of producing documents, avoid the expense of trial, and avoid disclosing its damages calculation methodology to the District Court and the parties while improperly blocking the settlement of this case. The Government cannot and should not be permitted to "have it both ways."

Further, if the Government truly contends that the Plaintiffs-Appellants in this case do not fully understand the nature or value of the claims, the proper course of action is to formally intervene. "If the United States believes that its rights are jeopardized by an ongoing *qui tam* action, the FCA provides for intervention – including "for good cause shown" after the expiration of the 60-day review period." *Eisenstein*, 556 U.S. at 936; *Griffith*, 2013 WL 620259, at *2

21

(citing *Eisenstein* and stating, "Even though the Act [§ 3730] grants the United States a limited role in the litigation, the United States is not an actual party to a qui tam suit unless it intervenes."). The Government should not be permitted to actively participate in and litigate this case, interject itself into the settlement process, and then demand unsubstantiated damages based on "cherry picked" claims with an error rate that ranges between 20-60%, all while refusing to disclose to the parties and the Court how it reached its damages figure.

## CONCLUSION

The District Court erred as a matter of law when it rejected the use of statistical sampling and extrapolation to prove liability or damages in this False Claims Act litigation. Further, given the unique circumstances of this case, the District Court erred in determining that the Government has unreviewable veto authority under 31 U.S.C. § 3730(b)(1) to reject the parties' settlement in this case.

As demonstrated in the record of the proceedings below, and for the foregoing reasons, Plaintiffs-Appellants respectfully request that this Court reverse the order of the District Court and permit the use of statistical sampling and extrapolation under *Daubert*. Plaintiffs-Appellants further respectfully request that this Court order that the District Court has the authority, given the unique circumstances of this case, to review the Government's objection to the settlement for reasonableness, to order that the Government disclose its damages calculation

methodology, to order that the Government respond to discovery requests, and to order that the Government underwrite the expenses of this litigation.

Dated: January 14, 2016                    Respectfully submitted,

                                           RICHARDSON, PATRICK,
                                           WESTBROOK & BRICKMAN, LLC

                                           s/ *T. Christopher Tuck*
                                           T. Christopher Tuck, Fed ID # 9135
                                           ctuck@rpwb.com
                                           Catherine H. McElveen, Fed ID # 10775
                                           kmcelveen@rpwb.com
                                           1037 Chuck Dawley Blvd. Bldg. A
                                           Mt. Pleasant, SC 29464
                                           (843) 727-6500 Phone
                                           (843) 216-6509 Facsimile

                                           Terry E. Richardson, Jr., Fed ID # 3457
                                           trichardson@rpwb.com
                                           Dan S. Haltiwanger, Fed ID # 7544
                                           dhaltiwanger@rpwb.com
                                           P.O. Box 1368
                                           Barnwell, SC 29812
                                           (888) 705-1619 Phone
                                           (803) 541-9625 Facsimile

                                           CHRISTY DELUCA, LLC
                                           Christy M. DeLuca, Fed ID # 7309
                                           christy@christydeluca.com
                                           3253 Sand Marsh Lane
                                           Mount Pleasant, SC 29466
                                           (843) 834-1289 Phone

                                           STROM LAW FIRM
                                           Jessica H. Lerer, Fed ID # 11403
                                           jlerer@stromlaw.com
                                           Mario A. Pacella, Fed ID # 7538
                                           mpacella@stromlaw.com

23

2110 Beltline Blvd., Suite A
Columbia, SC  29204
(803) 252-4800 Phone
(803) 252-4801 Facsimile

ATTORNEYS FOR PLAINTIFFS/
APPELLANTS, BRIANNA MICHAELS
AND AMY WHITESIDES

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 34(a), Plaintiffs-Appellants respectfully request that

this Court grant them oral argument on the issues presented by this appeal.

Dated: January 14, 2016                 Respectfully submitted,

RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC

s/ *T. Christopher Tuck*
T. Christopher Tuck, Fed ID # 9135
ctuck@rpwb.com
1037 Chuck Dawley Blvd. Bldg. A
Mt. Pleasant, SC 29464

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,611 words, excluding the portions of the brief excepted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft® Word 2013 in 14-point Times New Roman font.

Dated: January 14, 2016            Respectfully submitted,

RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC

s/ *T. Christopher Tuck*
T. Christopher Tuck, Fed ID # 9135
ctuck@rpwb.com
1037 Chuck Dawley Blvd. Bldg. A
Mt. Pleasant, SC 29464

25

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2016, the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

Dated: January 14, 2016                    Respectfully submitted,

                                           RICHARDSON, PATRICK,
                                           WESTBROOK & BRICKMAN, LLC

                                           s/ *T. Christopher Tuck*
                                           T. Christopher Tuck, Fed ID # 9135
                                           ctuck@rpwb.com
                                           1037 Chuck Dawley Blvd. Bldg. A
                                           Mt. Pleasant, SC 29464

26